No. 121,184

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN RE: A PURPORTED LIEN AGAINST PROPERTY OF
THE DISTRICT AT CITY CENTER, LLC.

SYLLABUS BY THE COURT

1.

Mechanic's liens are remedial mechanisms, created by statute and designed to protect unpaid suppliers of labor and materials for real estate construction projects. The theory underlying the granting of a mechanic's lien against the property is that the property improved by the labor, equipment, material, or supplies should be charged with the payment of the labor, equipment, material, or supplies.

2.

Once a mechanic's lien attaches to property, courts liberally construe Kansas' lien statutes to effect their remedial goal. But a party asserting a lien must strictly comply with Kansas' mechanic's lien statutes before that lien becomes enforceable.

3.

Any person filing a lien—whether a contractor, subcontractor, or other supplier—must include a verified statement showing the owner's name, the claimant's name and address for service of process, a description of the real property, and a reasonably itemized statement and the amount of the claim.

4.

Questions of statutory interpretation are legal issues over which appellate courts exercise unlimited review. When interpreting statutes, the fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be

ascertained. For this reason, courts look first to the statute's text; it is only when the meaning of the statutory language is ambiguous that courts turn to rules of statutory construction.

5.

The Kansas Legislature enacted K.S.A. 58-4301 in response to the activities of militias and common-law type groups, to provide a quick and efficient method to remove facially bogus liens meant solely to intimidate and harass property owners.

6.

K.S.A. 2019 Supp. 58-4301(e)(1) defines a purported lien as "fraudulent" if it is "not a document or instrument provided for by the constitution or laws of this state or of the United States." A court considering an allegation that a lien is "fraudulent" under this provision must not adjudicate whether the lien or interest is legitimate but only whether the documents are recognized under Kansas or federal law.

7.

If a document is provided for by constitution or statute, it is not presumed fraudulent. A mechanic's lien is a document provided for by Kansas law and thus is not fraudulent under K.S.A. 2019 Supp. 58-4301(e)(1).

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed February 28, 2020. Reversed and remanded.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, *Jaclyn S. Maloney*, of REAL Law, LLC, of Lee's Summit, Missouri, and *Mandi R. Hunter*, of Hunter Law Group, PA, of Prairie Village, for appellant Kansas City Steel Werx, Inc.

*Taylor Jensen* and *Colin M. Quinn*, of Long & Robinson, LLC, of Kansas City, Missouri, for appellee Haren & Laughlin Construction Company, Inc.

Before BUSER, P.J., SCHROEDER and WARNER, JJ.

WARNER, J.: Under Kansas law, a subcontractor may file a mechanic's lien with the district court against the property where he or she performs work to secure payment for unpaid labor and materials. Kansas statutes require a person filing a mechanic's lien to include a "reasonably itemized statement" explaining the lien amount. K.S.A. 60-1102(a)(4). The property owner may seek to cancel the lien if this requirement is not met. Or if the subcontractor seeks to enforce the lien, any interested party—the property owner, the general contractor, or any other subcontractor—may challenge the amount of the lien or its itemization.

In this case, a subcontractor filed a mechanic's lien against a development project in Lenexa to recover payment for unpaid work and materials, but the documents accompanying the lien may not have supported the entire amount sought. Instead of challenging the lien through normal channels, the contractor claimed the lien was "fraudulent" under K.S.A. 2019 Supp. 58-4301—a statute adopted to address bogus and abusive filings by militias and sovereign-citizen groups. The district court granted the contractor's petition and summarily removed the lien, ruling that without a complete itemization the lien was "not a document or instrument provided for by" Kansas law. We reverse, as K.S.A. 2019 Supp. 58-4301 is not a proper avenue for considering the validity of a mechanic's lien.

FACTUAL AND PROCEDURAL BACKGROUND

The District at City Center, LLC, engaged Haren & Laughlin Construction Co., Inc., as the contractor to build a mixed-use development in Lenexa. The contractor then hired a subcontractor, Kansas City Steel Werx, Inc., to supply steel and labor for the project. The contractor and subcontractor entered into a contract for $2,859,387. As work

3

progressed, the subcontractor requested compensation for additional work through change orders submitted to the contractor; the contractor approved two of these change orders, totaling $25,410.45, increasing the projected total contract cost to $2,884,797.45.

To ensure payment for its unpaid services, the subcontractor filed a mechanic's lien in October 2018 against the development. The lien stated unpaid labor and materials costs in the amount of $418,627.94—the difference between $2,904,384.10 (the value of the work the subcontractor asserted it performed at the time the lien was filed) and $2,485,756.16 (the payments the subcontractor had received). The itemizations filed with the lien included documentation of the projected contract cost of $2,884,797.45 (including the original contract and two approved change orders) as well as several change-order requests for additional labor. The lien stated the value of this additional labor was $91,203. But the attached change-order requests only totaled roughly $66,000, leaving the remaining $25,000 in claimed labor unitemized and unexplained. The lien stated the subcontractor's work on the development project was still ongoing, meaning additional costs were being incurred.

Once the mechanic's lien was filed, the property owner could have filed an action challenging the lien. See K.S.A. 60-1108. Or the subcontractor could have attempted to amend or foreclose on the lien, allowing all interested parties to weigh in on the contractor's payment obligations. See K.S.A. 60-1105(a); K.S.A. 60-1106. None of these actions took place, however. Instead, the contractor filed a motion under K.S.A. 2019 Supp. 58-4301, claiming the lien was "fraudulent" and asking the court to set it aside.

Two weeks later, before the subcontractor filed a response, the district court granted the contractor's motion and removed the lien. Relying on caselaw interpreting K.S.A. 60-1102's requirement of a "reasonably itemized statement," the court found the mechanic's lien was insufficient to inform the property owner whether the claimed charges were actually due:

4

"Here, the lien's itemized statement is insufficient, first because [the lien statement] does not account at all for nearly $25,000 in claimed 'additional work,' and second because the line statement values the 'total work performed' at $2,904,384.10, yet the stated total value of the contracted-for work plus the claimed 'additional work' is much higher . . . . These gaps make it impossible for [the contractor] to 'ascertain whether the material was furnished and the charges fair,' so the lien is facially deficient." (quoting *Huber Co. v. DeSouza*, 32 Kan. App. 2d 614, Syl. ¶ 2, 86 P.3d 1022 [1986]).

The court found that because the lien and attached itemization did not clearly account for all the amounts claimed, it was "not a document provided for by the constitution or by federal or state law." See K.S.A. 2019 Supp. 58-4301(e). The court therefore ruled the lien was "fraudulent" and removed it without further consideration of its validity.

The subcontractor moved to alter or amend the judgment and requested to amend the lien in order to provide additional documentation of its labor and material costs. The court denied both motions. The subcontractor now appeals.

DISCUSSION

Mechanic's liens are remedial mechanisms, created by statute and "designed to protect unpaid suppliers of labor and materials for real estate construction projects." *Tarlton v. Miller's of Claflin, Inc.*, 43 Kan. App. 2d 547, 549, 227 P.3d 23 (2010), *rev. denied* 292 Kan. 969 (2011); see K.S.A. 60-1101. "The theory underlying the granting of a lien against the property is that the property improved by the labor, equipment, material, or supplies should be charged with the payment of the labor, equipment, material, or supplies." *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 170, 910 P.2d 839 (1996). Once a lien attaches, courts liberally construe mechanic's lien statutes to effect that goal. *Buchanan v. Overley*, 39 Kan. App. 2d 171, 173, 178 P.3d 53, *rev. denied* 286 Kan. 1176 (2008). But a party asserting a lien must strictly comply with Kansas' mechanic's lien statutes before that lien becomes enforceable. *Haz-Mat Response*, 259 Kan. at 170; *Buchanan*, 39 Kan. App. 2d at 173.

5

Kansas statutes establish different lien-perfection requirements for general contractors and subcontractors. Compare K.S.A. 60-1102 (liens generally) with K.S.A. 60-1103 (subcontactors); see also *Tarlton*, 43 Kan. App. 2d at 549. Any person filing a lien—whether a contractor, subcontractor, or other supplier—must include a verified statement showing the owner's name, the claimant's name and address for service of process, a description of the real property, and "a reasonably itemized statement and the amount of the claim." K.S.A. 60-1102(a). A subcontractor who files a lien must also include the name of the contractor and is subject to different timing requirements for filing. See K.S.A. 60-1103(a)(1). Subcontractors who work on residential property—not at issue here—must include additional documentation. See K.S.A. 60-1103(a)(2), (3).

Once perfected, mechanic's liens are powerful tools that allow the lienholder to foreclose on the subject property if the claim remains unpaid. See K.S.A. 60-1105. That said, Kansas law provides multiple avenues for interested parties to challenge the validity and enforceability of a lien. For example, before a lienholder initiates a foreclosure action, a property owner can file a separate action to remove the cloud of the lien from the property. See K.S.A. 60-1108. During such actions, the parties may introduce evidence to determine, among other matters, whether the lien is properly supported and verified. See *Manhattan Mall Co. v. Shult*, 254 Kan. 253, 254-56, 864 P.2d 1136 (1993). Likewise, any action to foreclose on the lien must join all interested persons who claim an interest in the property, including the original contractor and any other subcontractors, to determine the validity of the lien and the priority of all interests asserted. See K.S.A. 60-1106; *Boyce v. Knudson*, 219 Kan. 357, 358-59, 548 P.2d 712 (1976).

The case does not involve either of these procedures. Instead, the contractor filed a motion "requesting a judicial determination of the status and validity of an instrument purporting to create an interest, lien, or claim" against the development property under K.S.A. 2019 Supp. 58-4301. Under this statute, a court may conduct an expedited review of a lien's status to determine whether it is "fraudulent":

6

"Any person who owns real or personal property or an interest in real or personal property or who is the purported debtor or obligor and *who has reason to believe that any document or instrument purporting to create a lien or claim* against the real or personal property or an interest in real or personal property previously filed or submitted for filing and recording *is fraudulent* as defined in subsection (e) may complete and file . . . a motion for judicial review of the status of documentation or instrument purporting to create a lien or claim as provided in this section." (Emphases added.) K.S.A. 2019 Supp. 58-4301(a)(1).

A motion under this statute may be filed "at any time without any time limitation" and does not require a filing fee. K.S.A. 2019 Supp. 58-4301(a)(1), (3). Courts may rule on the motion "solely on . . . the documentation or instrument attached to the motion and without hearing any testimonial evidence." K.S.A. 2019 Supp. 58-4301(b). The court's review "may be made ex parte without delay or notice of any kind." K.S.A. 2019 Supp. 58-4301(b). If the court concludes the lien is fraudulent, the court may issue an order "setting aside the lien and directing the filing officer to nullify the lien instrument." K.S.A. 2019 Supp. 58-4301(c)(2). And a party who succeeds in setting aside a filing as fraudulent may maintain a separate action against the filer for actual and statutory damages, as well as an injunction against filing any liens or claims in the future. See K.S.A. 2019 Supp. 58-4302.

A court presumes a lien is "fraudulent" within the meaning of the statute if it meets one of the three criteria listed in K.S.A. 2019 Supp. 58-4301(e)—that is, if it:

"(1) Is not a document or instrument provided for by the constitution or laws of this state or of the United States;

"(2) is not created by implied or express consent or agreement of the obligor, debtor or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary or other representative of that person; or

7

"(3) is not an equitable, constructive or other lien imposed by a court with jurisdiction created or established under the constitution or laws of this state or of the United States." K.S.A. 2019 Supp. 58-4301(e)(1)-(3).

The question presented in this appeal is whether a mechanic's lien that fails to strictly comply with the elements of K.S.A. 60-1102 or K.S.A. 60-1103 is "fraudulent" within the meaning of K.S.A. 2019 Supp. 58-4301(e)(1). More specifically, is a mechanic's lien with deficiencies in its attached itemization of costs "a document or instrument provided for by" Kansas law? See K.S.A. 2019 Supp. 58-4301(e)(1).

Statutory interpretation is a legal issue over which appellate courts exercise unlimited review. *In re Mechanic's Lien against City of Kansas City*, 37 Kan. App. 2d 440, Syl. ¶ 1, 154 P.3d 515, *rev. denied* 284 Kan. 946 (2007). When interpreting statutes, "the fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained." *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, Syl. ¶ 2, 349 P.3d 469 (2015). For this reason, we look first to the statute's text; it is only when the meaning of the statutory language is ambiguous that we turn to rules of statutory construction. 301 Kan. 916, Syl. ¶ 2.

The parties propose different interpretations of what it means to be a "document or instrument provided for by" state or federal law under K.S.A. 2019 Supp. 58-4301(e)(1). The subcontractor points out that mechanic's liens are contemplated—indeed, are established—by Kansas law; though parties may disagree over whether the lien is valid, the document itself is a recognized filing. See K.S.A. 60-1101 et seq. The contractor argues, and the district court found, that Kansas law does not recognize a mechanic's lien that fails to strictly comply with K.S.A. 60-1102. See *Buchanan*, 39 Kan. App. 2d at 173. The text of the statute does not resolve this disagreement. Thus, we turn to the statute's legislative history and other principles of construction to determine its meaning.

The Kansas Legislature enacted K.S.A. 58-4301 in 1998. This court has previously observed the law was apparently promulgated "in response to the activities of militias and common-law type groups such as the Freeman and the Christian Court." *City of Kansas City*, 37 Kan. App. 2d at 444. The members of these anti-government groups had been wreaking havoc by writing bogus and fraudulent checks and filing (or attempting to file) frivolous liens against property owners and government officials. Legislators passed S.B. 408, later codified as K.S.A. 58-4301, to provide a "quick and efficient method to remove facially bogus liens meant solely to intimidate and harass property owners." 37 Kan. App. 2d at 444 (citing Minutes, Sen. Judiciary Comm., January 15, 1998, attach. 1).

K.S.A. 58-4301 was modeled after a Texas statute—Tex. Gov't. Code Ann. § 51.901—enacted to address similar concerns. See Reports of the Special Committee on Judiciary to the 1998 Kansas Legislature, pp. 8-3, 8-4. Like K.S.A. 58-4301(e)(1), Texas law presumes a document that "purports to create a lien or claim" to be fraudulent if it "is not a document or instrument provided for by the constitution or laws of this state or of the United States." Tex. Gov't. Code Ann. § 51.901(c)(2)(A) (West 2007).

The Texas Court of Appeals has addressed the interaction of Texas' fraudulent-lien statute and mechanic's lien laws in multiple cases. In *In re Purported Liens or Claims Against Samshi Homes, L.L.C.*, 321 S.W.3d 665 (Tex. App. 2010), a person filed multiple mechanic's liens on properties but incorrectly named the company's managing member, not the company, as the properties' owner. On appeal, Samshi Homes—like the contractor here—argued the liens were "fraudulent" under Tex. Gov't. Code Ann. § 51.901(c)(2)(A) because they failed to comply with Texas law governing mechanic's liens. 321 S.W.3d at 666-67. The Texas Court of Appeals rejected this argument, finding that a trial court is limited under the fraudulent lien statute "to determining whether a particular instrument . . . is fraudulent as therein defined; it may not rule on the validity of the underlying lien itself or other claims between the parties." 321 S.W.3d at 667.

Because the mechanic's liens were "instruments 'provided by the . . . laws of [Texas],'" the court held they are "not presumed fraudulent" under § 51.901(c)(2)(A). 321 S.W.3d at 668. And any claims regarding the mechanic's liens' validity must be resolved under the mechanic's lien statutes, not the fraudulent-lien law.

Later Texas cases have similarly interpreted the "document or instrument provided for by [law]" language to limit a court's inquiry to whether a document—on its face—is recognized under the law. *Cardenas v. Wilson*, 428 S.W.3d 130, 132 (Tex. App. 2014); *David Powers Homes, Inc. v. M.L. Rendleman Co.*, 355 S.W.3d 327, 338 (Tex. App. 2011). That is, the fraudulent-lien law "'was intended not to address the validity of the purported lien or interest in the property but the legitimacy of the document manifesting the purported lien or interest.'" 355 S.W.3d at 338 (quoting *In re Hart*, No. 07-98-0292-CV, 1999 WL 225956, at *2 [Tex. App. 1999] [unpublished opinion]).

The contractor in this case presents two arguments questioning the analysis in these Texas cases. *First*, it asserts that Texas only requires substantial compliance with its mechanic's liens to render a lien enforceable, while Kansas law demands strict compliance to perfect a lien. Compare *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App. 1975), with *Buchanan*, 39 Kan. App. 2d 171, Syl. ¶ 3. But this point conflates assessing a lien's *validity* with an allegation that the lien is *fraudulent*. Under the Texas analysis, courts do not reach the question of a lien's validity under its fraudulent-lien law; instead, they examine the document or instrument to determine whether it is legally cognizable on its face.

*Second*, the contractor contends the Texas reasoning cannot be reconciled with this court's decision in *City of Kansas City*. We disagree. In that case, another panel of this court interpreted K.S.A. 2006 Supp. 58-4301(e)(2)—which applies when a person purports to file a lien for work completed without the property owner's consent. Although brought under the fraudulent-lien statute, *City of Kansas City* turned on a different

10

question: whether a person who completed work for a tenant could file a lien against a landlord. 37 Kan. App. 2d at 441-42. The parties in that case thoroughly litigated the issue, exchanged significant briefing before the district court with documentary evidence, and argued the issue at a hearing. 37 Kan. App. 2d at 442. After the district court made factual findings and ruled on the record, the only issue raised on appeal was whether these conclusions were supported by substantial competent evidence. 37 Kan. App. 2d at 448.

*City of Kansas City* did not consider whether a mechanic's lien is a "document or instrument provided for" by Kansas or federal law under K.S.A. 2019 Supp. 58-4301(e)(1). It involved an allegation of fraudulence brought under a different statutory subsection and raised a different question on appeal. In short, our analysis in *City of Kansas City* has no bearing on the central legal question in this case.

We find the reasoning of the Texas courts in interpreting Texas' fraudulent-lien law instructive to our interpretation of K.S.A. 2019 Supp. 58-4301. In adopting this state's fraudulent-lien law, the Kansas Legislature relied on Texas' similar statute, citing the same concerns Texas sought to address in its law as motivations for the Kansas provision. The law was not adopted in response to mechanic's liens that did not strictly comply with Kansas statutes—a matter already addressed in K.S.A. 60-1101 et seq.—but to abusive and illegitimate filings by extremist groups to cloud property owners' title.

Thus, a court considering an allegation that a lien is fraudulent under K.S.A. 2019 Supp. 58-4301(e)(1) must not "'adjudicate whether the lien or interest is legitimate but only whether the documents are'" recognized under Kansas or federal law. See *David Power Homes*, 355 S.W.3d at 338 (quoting *Hart*, 1999 WL 225956, at *2). To hold otherwise would allow a party, such as the contractor here, to circumvent the specific statutory provisions governing mechanic's liens and well-established contract law in favor of a summary, ex parte procedure. Such a practice would be contrary to our canons

11

of statutory construction, which presume the legislature intends specific provisions defining the specific rights at issue to control. See *Sierra Club v. Moser*, 298 Kan. 22, 54, 310 P.3d 360 (2013). Thus, adopting the reasoning of our Texas counterpart, under K.S.A. 2019 Supp. 58-4301(e)(1) if a document on its face is

> "provided for by constitution or statute, . . . then it is not 'presumed fraudulent' . . . . A trial court may base its finding solely on its review of the document itself and without hearing any testimonial evidence. A trial court may review the document ex parte and without delay or notice of any kind, but the trial court may make no finding as to any underlying claim. [Citations omitted.]" *Cardenas*, 428 S.W.3d at 132.

Applying these standards here, we conclude the document filed by the subcontractor in this case—a mechanic's lien—is a document provided for by Kansas law within the meaning of K.S.A. 2019 Supp. 58-4301(e)(1). The district court erred when it granted the contractor's motion under K.S.A. 2019 Supp. 58-4301. That ruling is reversed, and the case is remanded for further proceedings consistent with this opinion.

As a final note, our decision in this case relates only to whether the mechanic's lien was *fraudulent* under K.S.A. 2019 Supp. 58-4301(e)(1). We make no finding as to the *validity* of the mechanic's lien filed by the subcontractor in this case—that is, whether the lien strictly complies with K.S.A. 60-1102 and K.S.A. 60-1103. The district court reached that conclusion below. But that ruling was made under K.S.A. 2019 Supp. 58-4301(b), without allowing the subcontractor and any other interested parties to argue their relative positions and without allowing for any correction or amendment. If parties seek to challenge the subcontractor's lien, they must do so under the various procedures outlined in K.S.A. 60-1101 et seq., not under K.S.A. 2019 Supp. 58-4301.

Reversed and remanded.